**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
DUNKIN' DONUTS FRANCHISED       :
  RESTAURANTS LLC,                    :
  a Delaware Limited Liability Company,   :
DD IP HOLDER LLC,               :
  a Delaware Limited Liability Company,   :
BASKIN-ROBBINS FRANCHISED     :
  SHOPS LLC,                     :
  a Delaware Limited Liability Company, and :
BR IP HOLDER LLC,               :
  a Delaware Limited Liability Company,   :
                                    :

                  Plaintiffs,     :
                                    :

                      v.        :     C.A. No. 07-CV-11134 (RJH)
                                    :
SUNDRAM, INC.,                  :
  a New York Corporation,          :
SATYAM SHIVAM, INC.,         :
(now known as Satyam Eastchester LLC)   :
  a New York Corporation,          :
SHIVAM SUNDRAM, INC.,        :
(now known as Shivam Bruckner LLC)    :
  a  New York Corporation,         :
TKNY PARTNERS, LLC,          :
  a New York Limited Liability Company,  :
ANIL KAPOOR,                 :
  a resident of Massachusetts, and      :
PRAN TIKU,                    :
  a resident of Massachusetts,        :
                                    :
                 Defendants.    :
-------------------------------------------------------------x

## <u>FIRST AMENDED COMPLAINT</u>

       This is an action for breach of contract, trademark infringement, trade dress infringement,

trademark dilution, and unfair competition arising from, among other things, Defendants' failure

to comply with the "obey all laws" provisions in their Franchise Agreements based on their

failure to pay overtime wages to their employees, failure to pay minimum wages to their

employees, failure to pay all payroll taxes due, and filing false tax returns. Defendants have also

failed to pay Defendants Franchise Fees and Advertising Fees in breach of the parties' Franchise

Agreements. Finally, Defendants have violated Plaintiffs' standards for health, sanitation, and

safety, in breach of the parties' Franchise Agreements. Plaintiffs seek monetary, injunctive, and

other relief against Defendants for the reasons set forth below.

<h2 style="text-align:center"><u>PARTIES</u></h2>

1.      Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to

Dunkin' Donuts LLC and Dunkin' Donuts Incorporated, is a Delaware limited liability company

with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Dunkin'

Donuts Franchise Agreements dated prior to May 26, 2006 have been assigned to Dunkin'

Donuts Franchised Restaurants LLC. It is engaged in the business of franchising independent

businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts

franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin'

Donuts and to operate under the Dunkin' Donuts System, which involves the production,

merchandising, and sale of donuts and related products utilizing a specially designed building

with special equipment, equipment layouts, interior and exterior accessories, identification

schemes, products, management programs, standards, specifications, proprietary marks and

identification.

2.      Plaintiff DD IP Holder LLC, Dunkin's wholly-owned subsidiary and successor-

in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its

principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is

the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

3.     Plaintiff Baskin-Robbins Franchised Shops LLC, successor-in-interest to Baskin-Robbins USA LLC and Baskin-Robbins USA, Co., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  All Baskin-Robbins Franchise Agreements dated prior to May 26, 2006 have been assigned to Baskin-Robbins Franchised Shops LLC.  Baskin-Robbins is authorized to use the trademarks, service marks and trade names owned by BR IP Holder LLC and to sublicense Baskin-Robbins franchisees, as independent businesspersons, to use these marks and trade names.  Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks, and trademarks and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

4.     Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks.  Unless otherwise specified, Baskin-Robbins Franchised Shops LLC and BR IP Holder LLC are collectively referred hereinafter as "Baskin-Robbins" or "Baskin."

5.     Dunkin' and Baskin operate as separate corporations.  However, they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.

6.     Defendant Sundram, Inc. ("Sundram") is a New York corporation and, upon information and belief, its principal place of business is in the Bronx, New York.  Defendant Sundram was the owner of a Dunkin' Donuts shop located at 511 East 163rd Street, Bronx, New York, pursuant to a Franchise Agreement dated June 15, 2004.

7.     Defendant Satyam Shivam, Inc., upon information and belief now operating without Plaintiffs' authority or approval as Satyam Eastchester LLC ("Satyam Shivam"), is a New York corporation and, upon information and belief, its principal place of business is in the Bronx, New York.  Defendant Satyam Shivam was the owner of a Dunkin' Donuts shop located at 2451 Eastchester Road, Bronx, New York, pursuant to a Franchise Agreement dated January 18, 2004.

8.     Defendant Shivam Sundram, Inc., upon information and belief now operating without Plaintiffs' authority or approval as Shivam Bruckner LLC ("Shivam Sundram"), is a New York corporation, and upon information and belief, its principal place of business is in the Bronx, New York.  Defendant Shivam Sundram was the owner of a Dunkin' Donuts shop located at 114 Bruckner Boulevard, Bronx, New York, pursuant to a Franchise Agreement dated April 11, 2005.

9.     Defendant TKNY Partners, LLC ("TNKY Partners") is a New York limited liability company and, upon information and belief, its principal place of business is in New York, New York.  TNKY Partner was the owner of a Dunkin' Donuts and Baskin-Robbins

combo shop located at 145 East 125th Street, New York, New York, pursuant to a Franchise

Agreement dated February 1, 2006.

10.     Defendant Anil Kapoor is, upon information and belief, a natural person and a

citizen and resident of the Commonwealth of Massachusetts.  Defendant Anil Kapoor is an

officer, member, and/or shareholder of Sundram, Satyam Shivam, Shivam Sundram, and TKNY

Partners, and personally guaranteed the obligations of the foregoing entities pursuant to executed

personal guarantees.

11.     Defendant Pran Tiku is, upon information and belief, a natural person and a

citizen and resident of the Commonwealth of Massachusetts.  Defendant Pran Tiku is an officer,

member, and/or shareholder of TKNY Partners, and personally guaranteed the obligations of the

foregoing entity pursuant to an executed personal guarantee.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15

U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1338, & 1367(a).

13.     This Court has *in personam* jurisdiction over Defendants because they conduct

business in this District and the events giving rise to Plaintiffs' claims occurred in this district.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### The Dunkin' Donuts System

15.     Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

16.     DD IP Holder LLC is the owner of the trademark, service mark, and trade name

"Dunkin' Donuts," and related marks.  Dunkin' Donuts Franchised Restaurants LLC has the

exclusive license to use and license others to use these marks and trade name and has used them

continuously since approximately 1960 to identify its doughnut shops, and the doughnuts,

pastries, coffee, and other products associated with those shops.

17.    The Dunkin' Donuts trademarks and trade name are distinctive and famous and

have acquired secondary meaning.

18.    The Dunkin' Donuts trademarks and trade name are utilized in interstate

commerce.

19.    The Dunkin' Donuts marks have been very widely advertised and promoted by

Dunkin' Donuts over the years.  Dunkin' Donuts and its franchisees have expended

approximately $1,500,000,000 in advertising and promoting the Dunkin' Donuts marks over the

last thirty-five years.  Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005

alone on advertising and promotion.

20.    Dunkin' Donuts and its franchisees currently operate approximately 5,600 shops

in the United States and 2,000 shops outside of the United States.  Dunkin' Donuts shops feature

Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the

frankfurter lettering style.  In the more than forty-five years since the Dunkin' Donuts system

began, millions of consumers have been served in Dunkin' Donuts shops.

21.    As a result of the extensive sales, advertising, and promotion of items identified

by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts

marks, and to associate them exclusively with products and services offered by Dunkin' Donuts

and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known

trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts,

representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

### The Baskin-Robbins System

22.     Baskin-Robbins is the franchisor of the Baskin-Robbins system.

23.     BR IP Holder LLC is the owner of the trademark, service mark, and trade name

"Baskin-Robbins" and related marks.  Baskin-Robbins Franchised Shops LLC has the exclusive

license to use and license others to use these marks and trade names and has used them

continuously since approximately 1947 to identify its ice cream stores, and the ice cream and

other products associated with those stores.

24.     BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-

Robbins" or derivations thereof, as well as related marks.  Each of these registrations is in full

force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

25.     The Baskin-Robbins trademarks are utilized in interstate commerce.

26.     The Baskin-Robbins marks have been very widely advertised and promoted by

Baskin-Robbins over the years.  As a result, the Baskin-Robbins marks have become famous

throughout the United States.

27.     Baskin-Robbins and its franchisees currently operate approximately 2,500 stores

in the United States and 3,000 stores outside of the United States.  In the more than fifty-five

years since the Baskin-Robbins System began, millions of consumers have been served in

Baskin-Robbins stores.

28.     As a result of the extensive sales, advertising, and promotion of items identified

by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins

marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

### Defendants' Obligations Under the Franchise Agreements

29.    Defendants were licensed to use the Plaintiffs trade name and trademarks in accordance with the terms of the Franchise Agreement.

30.    Plaintiffs provide each of its franchisees a set of manuals and guidelines (collectively referred to hereinafter as the "Dunkin' Manuals"), which set forth in detail the procedures, methodology and standards applicable to the operation of a Dunkin' Donuts shop.

31.    Taken together, the Manuals provide detailed and specific guidance and standards regarding health, sanitation, and safety.

32.    The Franchise Agreements executed by Defendants contain acknowledgments and agreements by the Defendants concerning the importance of maintaining Plaintiffs' standards for health, sanitation, and safety. For example, the applicable paragraphs of the Franchise Agreements include:

> a.    Sections 5.0 and 5.1:    FRANCHISEE understands and acknowledges the importance to FRANCHISOR, FRANCHISEE and other franchisees, of FRANCHISEE's commitment to at all times operate the Unit in accordance with FRANCHISOR's Standards (as defined in Definitions paragraph "I"), in order to increase the demand for FRANCHISOR's products, to protect and enhance the reputation and goodwill of FRANCHISOR, to promote and protect the value of the Proprietary Marks and other reasons. FRANCHISEE agrees to devote continuous best efforts to successfully develop, manage and operate the Unit and to enhance the goodwill of the Proprietary Marks authorized by this Agreement and the System(s) as a whole. . . .    FRANCHISEE further agrees as follows:

b.      Section 5.1.1:  FRANCHISEE shall use all products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods of product storage, handling, preparation, packaging, delivery and sale prescribed by FRANCHISOR.  All such items must conform to FRANCHISOR's Standards. FRANCHISOR reserves the right to specify any item by brand.  FRANCHISEE shall carry out the business covered by this Agreement in accordance with the operational Standards established by FRANCHISOR and set forth in FRANCHISOR's operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to franchisees from time to time.

c.      Section 5.1.6:  FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR.

33.     The Franchise Agreements also contain acknowledgments and agreements concerning the use of Plaintiffs' proprietary marks.  The relevant sections include:

a.      Sections DD-7 7.0 and 7.1:  FRANCHISEE acknowledges and agrees that ***Dunkin' Donuts***® is a registered trademark owned or controlled by DUNKIN' DONUTS; that said mark has been and is being used by DUNKIN' DONUTS and by its franchisees and licensees; that said mark, together with the other Proprietary Marks presently owned or controlled by DUNKIN' DONUTS or which may be acquired in the future, constitutes part of the Dunkin' Donuts System; that valuable goodwill is associated with and attached to said mark and the other Dunkin' Donuts Proprietary Marks. . . . FRANCHISEE agrees to use the Proprietary Marks only in the manner and to the extent specifically licensed by this Agreement.

b.      Sections 8.0 and 8.0.1:  [N]either FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall . . . do or perform, directly or indirectly, any . . . act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and System(s).

34.     The Franchise Agreements (at Section 9.3) provide that Defendants shall pay to Plaintiffs all damages, costs and expenses, including attorneys' fees, incurred by Plaintiffs as a result of any breach of the Franchise Agreements by Defendants and Defendants' failure to cure

said default following notice or any termination of the Franchise Agreements.

35.　　　Maintenance of the highest standards of health, sanitation, and safety is essential to the development and maintenance of the reputation and goodwill of Plaintiffs.

36.　　　Under the terms of the Franchise Agreements, Defendants agreed they would use Dunkin' Donuts' and Baskin-Robbins' proprietary marks, including, but not limited to, their trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner and to the extent specifically licensed" by the agreement.  Franchise Agreement §§ 7.0 and 7.1.

37.　　　Defendants agreed that any unauthorized use of the Plaintiffs' proprietary marks during or after the expiration or earlier termination of the agreement would constitute an incurable default causing irreparable harm subject to injunctive relief.  Franchise Agreement §§ 7.1, 9.4.2 and 9.4.3.

38.　　　Under the terms of the Franchise Agreements, Defendants agreed as follows:

(a)　　　To pay Dunkin' and Baskin a franchise fee of 5.9 percent of the gross sales of the business (Franchise Agreement, Contract Data Schedule Item "E", Section 4.3);

(b)　　　To pay Dunkin' and Baskin an advertising fee of 5.0 percent of the gross sales of the business to the Franchise Owners Advertising and Sales Promotion Fund (Franchise Agreement, Contract Data Schedule Item "F", § 4.4);

(c)　　　To accurately report on an approved form each week gross sales for the preceding calendar week, at which time all fees required to be paid were to be remitted (Franchise Agreement, § 5.2.1); and

(d)　　　To pay interest on unpaid monies due under Section 4 of the Franchise Agreements (Franchise Agreement, § 9.3).

39.     Defendants agreed that they would comply with all applicable laws, rules, regulations, ordinances, and orders of public authorities.  Franchise Agreement § 5.1.7.

40.     Defendants also agreed not to use the franchised premises for any illegal or unauthorized purpose.  Franchise Agreement § 9.0.3.

41.     Defendants agreed that it would be a default under the Franchise Agreements if they were convicted of or plead guilty or "nolo contendere" to a felony, crime involving moral turpitude, or any other crime or offense that Plaintiffs believed is injurious to Plaintiffs' systems, proprietary marks or the goodwill associated therewith, or if Plaintiffs had proof that Defendants had committed such a felony, crime or offense.  Franchise Agreement § 9.0.2.

42.     Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Plaintiffs' proprietary marks and the Plaintiffs' systems.  Franchise Agreement § 8.0.1.

43.     Defendants agreed to keep full, complete, and accurate books and records in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Plaintiffs.  Franchise Agreement § 5.2.

44.     The Franchise Agreements each contain a "cross-default" provision, which states in Paragraph 9.0.4 that "Franchisee shall be in default under this Agreement . . . [i]f any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder . . . ."  Franchise Agreement § 9.0.4.

45.     Thus, the termination of one Franchise Agreement constitutes grounds for the termination of all of the other Franchise Agreements, and each of them individually.

46.    Under Paragraph 9.1.4 of the Franchise Agreements, no cure period is available if Defendants are in default under any paragraph designated in 9.0.1 through 9.0.4 or if they otherwise commit an act of fraud with respect to their obligations under the Agreement. Moreover, as a matter of law, no cure period is available for such defaults.

47.    Defendants agreed that, upon the termination of the Franchise Agreements, their rights to use Plaintiffs' proprietary marks and system would cease, and that they would promptly pay Plaintiffs any damages, costs, and expenses, including reasonable attorneys' fees, incurred by Plaintiffs as a result of the Defendants' default(s).  Franchise Agreement §§ 9.3, 9.4, 9.4.1 and 9.4.2.

48.    Defendants agreed that any unauthorized use of Plaintiffs' proprietary marks following the effective date of the termination of the Franchise Agreements would result in irreparable harm to Plaintiffs and would constitute willful trademark infringement.  Franchise Agreement § 9.4.3.

### The Multiple Unit Store Development Agreement

48.    On September 29 2003, Defendant Ankil Kapoor signed a Multiple Unit Store Development Agreement ("SDA") to develop combination Dunkin' Donuts/Baskin-Robbins units within designated areas in the Bronx, New York.  The SDA was amended on June 14, 2004.  Under the SDA, Defendant agreed that his right to develop the franchises was contingent upon his not being in default of the SDA or any Franchise Agreements he may have with Plaintiffs.  By engaging in the breaches of the Franchise Agreements as noted herein, Defendant breached the SDA.

## DEFENDANTS' DEFAULTS

### Shop Inspections For Compliance with
### Plaintiffs' Standards for Health, Sanitation, and Safety

50.    On November 15, 2007, Defendants' Shivam Sundram Shop was inspected by a Dunkin' representative. Defendants' Shivam Sundram Shop was identified as containing numerous standards violations relating to health, sanitation, and safety which were damaging to Plaintiffs' reputation and goodwill.

51.    On November 15, 2007, the Dunkin' representative hand-delivered to Defendants' shop a Notice to Cure listing the standards violations at the shop and requesting that the violations be cured immediately.

52.    On November 23, 2007, the Dunkin' representative reinspected Defendants' Shivam Sundram Shop. Numerous standards violations remained uncured.

53.    Despite the fact that Dunkin' has brought the standards violations to the attention of Defendants, Defendants have failed to cure these violations and bring the shop into conformity with the required standards.

54.    Defendants' actions have caused and continue to cause irreparable harm to Dunkin', including harm to Dunkin's reputation and goodwill. Granting the requested injunctive relief would not harm any third parties and would advance the public interest.

### Nonpayment of Franchise Fees and Advertising Fees

55.    As set forth above, under the Franchise Agreements, Defendants agreed to pay Dunkin' and Baskin franchise fees and advertising fees on a weekly basis, as well as interest on unpaid monies due under Section 4 of the Franchise Agreements.

56.    Defendants failed to pay franchise and advertising fees to Dunkin' and Baskin as required by the Franchise Agreements.

57.    On or about December 10, 2007, Plaintiffs served a Notice to Cure on Defendants advising them that they were in default of the Franchise Agreements for failing to pay Dunkin' and Baskin monies due under the Franchise Agreements.  Plaintiffs provided Defendants with fifteen (15) days in which to cure the defaults.

58.    Defendants failed to cure their defaults within the fifteen (15) days provided in the Notice to Cure.

59.    Pursuant to the applicable provisions of the Franchise Agreements, on or about January 8, 2008, Plaintiffs sent Defendants Supplemental Notice of Termination, terminating the Franchise Agreements, and demanding that they cease using Dunkin' Donuts' and Baskin-Robbins' trade names and proprietary marks immediately upon the effective date of termination, surrender possession of the leased premises, and thereafter comply with their post-termination obligations under the Franchise Agreements.

### Failure to Obey All Laws

60.    Plaintiffs recently discovered that Defendants breached their agreements by the conduct described below.

61.    On information and belief, Defendants have failed to pay numerous employees at overtime wage rates due for work in excess of 40 hours per week in the shops.

62.    On information and belief, Defendants  have failed to pay numerous employees at minimum wage rates.

14

63.     On information and belief, Defendants have participated in a fraudulent scheme to avoid paying federal and state payroll taxes due and owing to the IRS and the New York State Department of Taxation and Finance in violation of employee income tax withholding laws and regulations.

64.     Based on the foregoing, and pursuant to the applicable provisions of the Franchise Agreements and SDA, Plaintiffs sent to Defendants a Notice of Default and Termination, terminating the aforementioned agreements effective immediately upon Defendants' receipt of the Notice, stating the grounds for termination, and demanding that Defendants immediately comply with their post-termination obligations as set forth in the agreements.

**COUNT I**
**(Breach of Contract)**
**Breach of Dunkin' Donuts' Standards for Health, Sanitation and Safety**

65.     The allegations of paragraphs 1 through 64 are hereby incorporated by reference.

66.     The failure of Defendant to maintain Defendants' Shivam Sundram Shop and to conduct business in a manner which conforms to the standards established by Dunkin' in the Franchise Agreement and the Dunkin' Manuals constitutes a breach of the contractual obligations and agreements undertaken by Defendants in the Franchise Agreement.

67.     These breaches of the Franchise Agreement constitute irreparable injury to the reputation and goodwill associated with the trademarks, trade name, and trade dress of Plaintiffs and its other franchisees.

68.     As a direct and proximate result of these breaches, Dunkin' has incurred substantial losses, fees, and expenses.

**COUNT II**
**(Breach of Contract)**
**Nonpayment of Franchise Fees and Advertising Fees**

69.    The allegations of paragraphs 1 through 68 are hereby incorporated by reference.

70.    The failure to pay all monies due under the Franchise Agreements after notice and opportunity to cure constitutes breaches of the Franchise Agreements and provides good cause for terminating those Agreements.

71.    As a direct and proximate result of these breaches, Dunkin' and Baskin have incurred substantial losses, fees, and expenses.

**COUNT III**
**(Breach of Contract)**
**Failure to Obey All Laws**

72.    The allegations of paragraphs 1 through 71 are hereby incorporated by reference.

73.    The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Franchise Agreements.

74.    These breaches constitute grounds for terminating the Franchise Agreements.

75.    As a result of Defendants' actions, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

**COUNT IV**
**(Breach of Contract – SDA)**

76.    The allegations of paragraphs 1 through 75 are hereby incorporated by reference.

77.    The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the SDA.

78.     These breaches constitute grounds for terminating the SDA.

79.     As a result of Defendants' actions, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT V
### (Trademark Infringement)

80.     The allegations of paragraphs 1 through 79 are hereby incorporated by reference.

81.     The use in commerce of the Dunkin' and Baskin-Robbins trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin's and Baskin-Robbins' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' and Baskin-Robbins. Such unauthorized use of Dunkin's and Baskin-Robbins' trademarks and trade names infringes Dunkin's and Baskin-Robbins' exclusive rights in their trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

82.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

83.     As a result of the actions of Defendants, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VI
### (Unfair Competition)

84.     The allegations of paragraphs 1 through 83 are hereby incorporated by reference.

85.    The use in commerce of Dunkin's and Baskin-Robbins' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' and Baskin-Robbins is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person.  Such unauthorized use of Dunkin's and Baskin-Robbins' trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

86.    The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

87.    As a result of the actions of Defendants, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VII
### (Trademark Dilution)

88.    The allegations of paragraphs 1 through 87 are hereby incorporated by reference.

89.    Defendants' commercial use in commerce of the Dunkin' and Baskin-Robbins trademarks and trade name outside the scope of the Franchise Agreements and without Plaintiffs' consent causes dilution of the distinctive quality of the Plaintiffs' trademarks and trade name. Such unauthorized use of the Plaintiffs' trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(c), and applicable state law.

90.    As a result of Defendants actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount yet to be determined.

## COUNT VIII
## (Trade Dress Infringement)

91.     The allegations of paragraphs 1 through 90 are hereby incorporated by reference.

92.     The Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" and "Baskin-Robbins" appear in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts and Baskin-Robbins use for the doughnut and ice cream shops operated by Dunkin' Donuts and Baskin-Robbins licensees.

93.     The use by Defendants of trade dress that is identical to the Dunkin' Donuts and Baskin-Robbins trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts and Baskin-Robbins shops operated by Dunkin' Donuts and Baskin-Robbins licensees.  Such adoption of Dunkin' Donuts and Baskin-Robbins trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

94.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

95.     As a result of the actions of Defendants, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

### Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a.    Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreements and SDA and constitutes grounds for terminating the Franchise Agreements and SDA;

b.    Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements and SDA by Defendants;

c.    Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements and SDA as of the effective date of the Notices of Termination, or as otherwise provided by applicable law;

d.    Enjoin Defendants and all those acting in concert with them from infringing upon Plaintiffs' trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Plaintiffs;

e.    Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements, SDA, Lease Riders, and Lease Option Agreements;

f.     Award Plaintiffs judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

g.    Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

h.    Award Plaintiffs such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

   i.  Award Plaintiffs their costs and attorneys' fees incurred in connection with this

action pursuant to the contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

   j.  Award Plaintiffs such other relief as this Court may deem just and proper.


        Respectfully submitted,


        /s/ Ronald D. Degen_____
        Ronald D. Degen, Esq.  (RD 7808)
        Scott Goldfinger, Esq.  (SG 9219)
        O'ROURKE & DEGEN, PLLC
        225 Broadway, Suite 715
        New York, New York 10007
        Telephone: (212) 227-4530
        Facsimile: (212) 385-9813


        Robert L. Zisk  (RZ 1275)
        Eric Yaffe (EY 0368)
        David E. Worthen  (DW 8519)
        Katherine L. Wallman*  (KW 3966)
        GRAY, PLANT, MOOTY, MOOTY
         & BENNETT, P.A.
        2600 Virginia Avenue, N.W. – Suite 1111
        Washington, DC 20037
        Telephone: (202) 295-2200
        Facsimile: (202) 295-2250
        *Not admitted to the D.C. Bar*

Dated:  January 9, 2008      Attorneys for Plaintiffs