MICHAEL EINBINDER (ME-3930)
MATTHEW DAVID BROZIK (MB-6026)
EINBINDER & DUNN, LLP
*Counsel for Defendants*
104 WEST 40th STREET
NEW YORK, NEW YORK 10018
(212) 391-9500
(212) 391-9025 (facsimile)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, DD IP HOLDER LLC, a Delaware Limited Liability Company, DD IP HOLDER LLC, a Delaware Limited Liability Company, BASKIN-ROBBINS FRANCHISED SHOPS LLC, a Delaware Limited Liability Company, and BR IP HOLDER LLC, a Delaware Limited Liability Company,<br><br>                                                Plaintiffs,<br><br>        v.<br><br>SUNDRAM, INC., a New York Corporation, SATYAM SHIVAM, INC. (now known as Satyam Eastchester LLC), a New York Corporation, SHIVAM SUNDRAM, INC. (now known as Shivam Bruckner LLC), a New York Corporation, TKNY PARTNERS, LLC, a New York Limited Liability Company, ANIL KAPOOR, a resident of Massachusetts, and PRAN TIKU, a resident of Massachusetts,<br><br>                                                Defendants. | 07-CV-11134 (RJH)<br><br>**AFFIDAVIT OF NEEL TIKU** |

STATE OF MASSACHUSETTS    )
                                                  ) ss:
COUNTY OF SUFFOLK           )

      Neel Tiku, being duly sworn, states:

      1.    I am a Manager of TKNY Global LLC, which owns, as subsidiaries, Satyam Eastchester LLC, Sundram Washington LLC, Shivam Bruckner LLC, and TKNY Partners LLC (each an "Operator"), each of which operates one Dunkin' Donuts or Dunkin' Donuts/Baskin-

Robbins unit at issue herein. I am fully familiar with the operations of each Operator and its unit and with the facts set forth below. I submit this affidavit in opposition to the application of the plaintiffs, by order to show cause, for a preliminary injunction enjoining the defendants from continuing to use the trade and service marks and names of the plaintiffs.

2. The plaintiffs allege that the four franchised business units of the Operators failed to pay franchise fees and/or advertising fees as required by the operative franchise agreements and that therefore each Operator is in default of its respective agreement. (These are the first allegations of failure of any Operator to pay fees since the beginning of each franchise.) The plaintiffs have purported to terminate each Operator on this basis.

3. The Operators have paid all monies owing. In fact, they had done so even before they were aware of either the notices to terminate or the notices to cure sent by counsel for the plaintiffs. The plaintiffs are now seeking to take the defendants' franchises away from them based on the nonpayments—being relatively minor, short-term defaults—yet the plaintiffs do not tell the court that the defendants have remedied their payment defaults fully.

4. Unfortunately, each Operator did fall slightly behind in its payment of fees[*] due to a purely ministerial, administrative error that occurred in part because during the time in question, the Operators were changing bookkeepers. The failure to make timely payments to the plaintiffs was the result of inadvertent miscommunication during the transfer of the Operators' books and records from one bookkeeping firm to another. Also during this period, overall management of the four Operators was being transferred to me from another Manager of TKNY Global, but regrettably I was not able to give the business my full attention, because my father, defendant Pran Tiku, was in the hospital in India, seriously ill, and I was growing more and more

---

[*] Of the four Operators, one fell behind four weeks, another five, and the remaining two six weeks.

preoccupied as his condition worsened. I am now again more actively involved in the management of TKNY Global and each Operator, however, and each Operator has remained current with payments since curing its default.

5. The plaintiffs claim to have sent a notice to cure to each Operator on or about December 10, 2007. It appears from the FedEx receipts shown to me by my lawyer that each notice to cure was signed for on December 11, 2007, by a non-manager employee at each unit. None of the four packages ever came to the attention of any store manager or any member or manager of each Operator or TKNY Global, including me.

6. TKNY Global has been continuously represented by its current counsel, Einbinder & Dunn, LLP, since the beginning of the earliest of the Operators' franchises, and counsel for the plaintiffs, including in particular O'Rourke & Degen, PLLC, the firm that prepared and transmitted the notices to cure, has known as much. During the period when the Operators fell behind in payment and between when the plaintiffs served the notices to cure and when they served the notices of termination, TKNY Global and Einbinder & Dunn were supplying certain documentation to the plaintiffs, at the plaintiffs' request. Yet the plaintiff did not communicate anything regarding the missing payments from the Operators or the notices to cure to me or to anyone at Einbinder & Dunn.

7. In fact, the plaintiffs filed this lawsuit on December 10, 2007, *the very date of the notices to cure.* Both were prepared by O'Rourke & Degen. At the same time, Mr. Degen of O'Rourke & Degen called my lawyer to ask if Einbinder & Dunn could accept service of the original summons and complaint (which did not include a cause of action for termination based on defaults in payments of fees) on behalf of defendant Shivam Sundram, Inc. This would mean that the plaintiffs' counsel was preparing the notices to cure at the same time that it was

preparing the complaint in this matter. Yet plaintiffs' counsel did not mention anything about any failures to make payments even while it was communicating with the Operators' counsel about this lawsuit. Had plaintiffs' counsel done so, the Operators would have cured the defaults *immediately,* well within the cure period.

8.    As it happened instead, no one in any capacity with any Operator or TKNY Global was aware of any notice to cure until I became aware of the notices of termination served on the Operators on or about January 9, 2008—when Einbinder & Dunn received copies of the notices to terminate from O'Rourke & Degen, at which time Einbinder & Dunn then requested of O'Rourke & Degen copies of the notices to cure as well. Again, by this time, all outstanding payments had been made.

9.    I was surprised, to say the least, to learn, indirectly, that the Operators were behind in payments, inasmuch as starting some time before this, I was in almost constant contact with one or more representatives of the two plaintiff franchisors for various reasons. Yet no one from either communicated with me regarding the failure of the four Operators to stay current with fees payments. The only notification given was the December 10 letters, whereas typically I will receive telephone calls and/or emails regarding any concerns of the franchisors.

10.    The plaintiffs' furtive delivery of the notices to cure without any additional mention of them or the underlying payment latenesses are a part of the plaintiffs' ongoing harassment of the Operators, a pretext for the plaintiffs' admitted desire to push the Operators out of the franchise systems.

11.    In November of last year, counsel to TKNY Global and I attended a meeting at the plaintiffs' headquarters in Canton, Massachusetts, at which we were informed, in sum and substance, that the plaintiffs wanted us out of the system and were going to push us out. Since

4

then, the plaintiffs have regularly made things difficult for the Operators, including by manufacturing concerns and then requiring us to provide voluminous documentation related thereto.

12. I believe, based on my own experience and from speaking with other Dunkin' Donuts/Baskin-Robbins franchisees, that the plaintiffs are going to great lengths lately to remove Indian and other minority franchisees from their systems, and that therefore, when an opportunity arose to default the Operators and TKNY Global (all of the principals of which are Indian), the plaintiffs jumped at the chance to do so.

13. It would be unfair, not to mention devastating, if paying $30,000 at most six weeks late would mean TKNY Global's having to forfeit more than 3 million dollars. In total, TKNY Global LLC and the Operators have invested approximately $3.1 million dollars in the four franchises at issue (not including equipment recently installed, as required by the plaintiffs, at an additional cost of $130,000). The amount of the fees ($30,075.22) unintentionally untimely (but ultimately, and before any purported termination or commencement of this lawsuit, *without even benefit of the notices to cure*) paid, due to a purely administrative, one-time error therefore represents **less than one percent of what the defendants stand to lose** if they are enjoined from using the plaintiffs' marks and names, which would mean, effectively, shutting down the four units.

14. A preliminary injunction enjoining the Operators from using the marks and names of the plaintiffs would require the Operator's units to "go dark," it being impossible for them to do business without using the plaintiffs' marks and names. Shutting down the four businesses for the duration of this lawsuit would have the practical effect of ruining them, such that even if the defendants are ultimately successful, as is expected, and the terminations are not ratified by this

5

court, the plaintiffs will nonetheless have achieved their invidious goal of destroying the defendants' businesses, making their franchises worthless and removing them from the franchise system because of our ethnicity.

15. Under the circumstances, and in particular the plaintiffs' demonstrated desire to disenfranchise minority operators, the defendants are actively seeking prospective purchasers of their business, hoping to leave the Dunkin' Donuts/Baskin-Robbins systems on their own terms. To do so, however, the defendants will need to be able to offer for sale a going concern. Going dark as a result of not being able to use the plaintiffs' trademarks during the pendency of this action would mean being unable to offer the business as a going concern, which would mean the loss of the defendants' entire investment.

16. Meanwhile, however, because the defendants maintain that termination is improper and because they need to have a going concern to present to prospective purchasers, the defendants are continuing the businesses of the four franchise units, and they are continuing the business exactly as it has been to date, including specifically by providing to the public the very same products as they always have, procured from the very same approved facilities as they always have been. As far as our customers are concerned, therefore, it is business as usual.

_____
Neel Tiku

Sworn to before me this
5th day of February 2008

_____
Notary Public

MYLANNIE C. [illegible]
Notary [illegible]
Commonw[ealth] [illegible]
My Co[mmission] [illegible]
Sep[tember] [illegible]